IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JUAN RODRIGUEZ,<br><br>      Plaintiff,<br><br>vs.<br><br>PINSKI, et al.,<br><br>      Defendants. | CV 17-104-H-BMM-JTJ<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS** |

**INTRODUCTION**

Juan Anastasio Rodriguez ("Rodriguez") filed an Amended Complaint against 44 defendants alleging 41 different claims, most of which related to the termination of his parental rights. (Doc. 42). Defendants April Jones, Theresa Adams, Trevor Lewis, Becci Delinger, Heather Smith, Theresa Diekhans, Brandi Campbell, Alana Kietzman, and Sahrita Jones (collectively, "State Defendants") move to dismiss. (Docs. 58, 64). Rodriguez has also filed a motion to compel

1

compliance with the Federal Rules of Civil Procedure (Doc. 52) and a motion for typewriter use. (Doc. 74). He also moves for default judgment against three defendants. (Docs. 79, 83, and 87).

United States Magistrate Judge John Johnston issued Findings and Recommendations. (Doc. 89). Judge Johnston recommends that the Court grant State Defendants' motions to dismiss. (Doc. 89 at 1). Judge Johnston denied Rodriguez's motions as moot. *Id.* Rodriguez filed objections to Judge Johnston's Findings and Recommendations. (Doc. 93). State Defendants filed a response to Rodriguez's objections. (Doc. 94).

## BACKGROUND

Rodriguez is a prisoner proceeding *pro se*. State District Court Judge Pinski terminated Rodriguez's parental rights on July 13, 2015. The Montana Supreme Court affirmed the decision to terminate Rodriguez's parental rights on September 20, 2016, finding beyond a reasonable doubt that custody of his children would likely result in serious emotional or physical damage to the children. *Matter of B.R.*, 381 P.3d 548, 549 (Mont. 2016). Rodriguez filed a petition for writ of certiorari with the United States Supreme Court on March 10, 2017, and that petition was denied on May 15, 2017. *Rodriguez v. Montana*, 137 S. Ct. 2124 (2017).

Rodriguez filed this action on November 7, 2017, with a 17-page Complaint, naming the State of Montana, the Montana Department of Public Health and Human Services ("DPHHS") and Does as defendants. (Doc. 2). His only claim was to ask the Court to invalidate a state court action terminating his parental rights. Plaintiff asserted that the state court had done so in violation of the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1901 et seq. Rodriguez then filed a subsequent document entitled "Amend to add Defendants" in which he identified sixteen new defendants, without adding any factual allegations as to these defendants. Most of these defendants were discussed in the original Complaint, but not named as defendants in the caption. (Doc. 10).

On May 31, 2018, Judge Johnston filed Findings and Recommendations, in which he screened Rodriguez's Complaint pursuant to 28 U.S.C. § 1915. Ultimately, Judge Johnston recommended dismissal of Rodriguez's Complaint for failure to state a claim, on both *Rooker-Feldman* and ICWA grounds. (Doc. 14 at 12). The only aspect that the Court specifically identified as reviewable was his 25 U.S.C. § 1912(b) lack of counsel claim, which the Court concluded failed to state a claim. Rodriguez objected, not on substantive grounds, but claiming that he was entitled to attempt to amend his Complaint. (Doc. 22). The Court adopted the

Findings and Recommendations on November 28, 2018, and dismissed the case. (Doc. 26).

Rodriguez appealed this order to the Ninth Circuit. On May 13, 2020, the Ninth Circuit vacated and remanded, concluding that Rodriguez should be given the opportunity to attempt to amend his complaint. (Doc. 32). Rodriguez was directed by this Court to file an Amended Complaint, which he did on December 11, 2020. (Doc. 42).

Plaintiff's Amended Complaint has ballooned to 44 defendants, 41 claims and almost 100 pages, and alleges as the basis for his claims jurisdiction under 42 U.S.C. §§ 1983, 1985-86, 28 U.S.C. § 1367, 25 U.S.C. § 1914, 18 U.S.C. § 1961 – 1968 (RICO), and 28 U.S.C. §§ 1330 – 1360 (including 30 different sections related to federal jurisdiction). (Doc. 89 at 3). Rodriguez also asserts violations of the International Declaration of Human Rights and the International Covenant on Civil and Political Rights. *Id.*

On April 15, 2021, the Court ordered the Amended Complaint served on a subset of the State Defendants. (Doc. 45). Rodriguez moved for service of four other defendants. (Doc. 51). The U.S. Marshals served Judith Hartelius, Anna Fisher, and Amanda Hope Fortenberry. (Docs. 55, 57, and 69.) Lisa Anderson

Mangan appeared by counsel. (Doc. 63.) Hartelius, Hope Fortenberry, and Fisher have not appeared.

On December 8, 2021, Rodriguez requested that the Clerk of Court enter default against Defendants Hartelius, Fisher, and Fortenberry for failure to appear. The Clerk did so. (Docs. 78, 82 and 86). Rodriguez also moved for entry of default judgment against these same defendants. (Docs. 79, 83, and 87).

## DISCUSSION

The Court reviews de novo Findings and Recommendations to which a party timely objected. 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which no party specifically objects. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Where a party's objections constitute perfunctory responses argued in an attempt to engage the district court in a reargument of the same arguments set forth in the original response, however, the Court will review the applicable portions of the findings and recommendations for clear error. *Rosling v. Kirkegard*, 2014 WL 693315 *3 (D. Mont. Feb. 21, 2014) (internal citations omitted).

Rodriguez's 36-page objection systematically objects to every portion of Judge Johnston's Findings and Recommendations, therefore, the Court addresses each of Judge Johnston's conclusions in turn.

## I. State Defendants' Motion to Dismiss (Doc. 58)

State Defendants move to dismiss Rodriguez's Amended Complaint on three grounds: statute of limitations, failure of amendments to relate back, and immunity. (Doc. 59 at 4.) Judge Johnston found that both Rodriguez's claims under ICWA and 42 U.S.C. § 1983 were time-barred.

### a. Statute of Limitations under ICWA

Rodriguez brings his claim under 25 U.S.C. § 1914, which allows a parent to "petition any court of competent jurisdiction to invalidate [termination of parental rights] upon a showing that such action violated" §§1911, 1912, and 1913 of ICWA. Section 1914 does not contain a specific statute of limitations. In the absence of a specific limitations period in federal law, "courts must adopt a limitations period from analogous state law unless federal law 'clearly provides a closer analogy than available state statutes, and . . . the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *DirecTV, Inc. v. Webb*, 545 F.3d 837, 847 (9th Cir. 2008) (internal citations omitted).

6

Rodriguez argued in his response to the motions to dismiss that the two-year statute of limitations that applies to claim under 25 U.S.C. § 1913(d) should apply to his claims. *See* (Doc. 70 at 5). Section 1913(d) covers challenges to voluntary terminations of parental rights alleging fraud or duress. 25 U.S.C. § 1913. Judge Johnston determined instead that Rodriguez's ICWA claims were subject to a six-month statute of limitation under Mont. Code Ann. § 42-2-620, which controls involuntary parental right terminations. (Doc. 89 at 7).

Rodriguez has changed course in his objection, however, to argue that challenges to involuntary terminations of parental rights under ICWA are simply not subject to a statute of limitations at all. Rodriguez bases this proposition on 25 U.S.C. § 1921 which states:

> In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.

25 U.S.C. § 1921. Rodriguez argues that the absence of a statute of limitations in § 1914 "provides a higher standard of protection" than the six-month statute of limitation imposed by Judge Johnston. (Doc. 93 at 3).

7

Rodriguez's interpretation of § 1921 fails in several respects. Section 1921 applies a State or Federal standard when that standard "provides a higher standard of protection . . . *than the rights provided under this subchapter*." 25 U.S.C. § 1921 (emphasis added). The construction of § 1921 thus implies that the "higher standard of protection" must come from a separate state or federal law, not from ICWA itself. A "higher standard of protection" also cannot be made up from Congress's failure to articulate any standard at all. Rodriguez's "argument fails because he cannot show that Congress's silence on the limitations issue indicates an intention to allow ICWA challenges at any time." *In re Adoption of Erin G.*, 140 P.3d 886, 893 (Alaska 2006). The Court finds no error with Judge Johnston's analysis of the proper statute of limitations. Rodriguez's ICWA claims are subject to the six-month limitation of Mont. Code Ann. § 42-2-620.

Rodriguez no longer argues for a different date on which his ICWA claims began to accrue, nor does he argue for equitable tolling since he no longer believes that his ICWA claims are subject to a statute of limitations of any kind. (Doc. 93 at 6-7). He does continue to argue these points, however, with regard to his § 1983 claims. *Id.* A document filed *pro se* is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court interprets Rodriguez's arguments regarding the

date of accrual and equitable tolling to apply to his ICWA claims as well as his § 1983 claims.

A federal claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Rodriguez continues to argue that his claims did not accrue until the denial of the writ of certiorari by the U.S. Supreme Court on May 15, 2017. (Doc. 89 at 8).

Judge Johnston determined that Rodriguez's claims could have begun to accrue when his parental rights were terminated on July 15, 2015. (Doc. 89 at 10). In light of Rodriguez's *Younger* abstention concerns, however, Judge Johnston decided that Rodriguez's claims began to accrue when his state court appeals were complete as a matter of right on September 20, 2016. *Id.* The Court determines that this finding was in error.

Federal courts should abstain from exercising jurisdiction over a claim when doing so would "have the practical effect of enjoining . . . ongoing state proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). Rodriguez's state proceedings remained ongoing so long as his petition for a writ of certiorari to the U.S. Supreme Court remained pending. If the Court is truly to take Rodriguez's *Younger* concerns into account, then the date

9

from which his ICWA claims accrued should be the date the U.S. Supreme Court denied Rodriguez's petition for a writ of certiorari—May 15, 2017.

The state provision from which Judge Johnston pulled the applicable statute of limitations provides additional support for this proposition. Montana Code Ann. § 42-2-620 states that an order terminating parental rights may no longer be questioned "upon expiration of 6 months" after the order was issued "subject to the disposition of a timely appeal." Mont. Code Ann. § 42-2-620. Rodriguez timely appealed the Montana Supreme Court's decision, and, therefore, pursuant to Mont. Code Ann. § 42-2-620, the running of the statute of limitations should not have begun to run until the U.S. Supreme Court disposed of that appeal.

Rodriguez alleged his ICWA claims as part of his original Complaint on November 6, 2017. Six months from the date that his petition for a writ of certiorari was denied would have been November 15, 2017. The Court finds that Rodriguez timely filed his ICWA claims.

  b. **Statute of Limitation under 42 U.S.C. § 1983**

The parties agree that a § 1983 claim is subject to a three-year statute of limitations, but they disagree about whether Rodriguez's claims relate back to the filing of his Original Complaint. (Doc. 89 at 4).

10

Fed. R. Civ. P. 15(c) allows relation back under certain circumstances. Under Rule 15(c)(1)(B), an amendment asserting a new or changed claim relates back to the date of the original pleading if the amendment "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). An amended claim that meets this test may also add additional or different defendants, if those defendants were properly served within the time set by Rule 15(c). Fed. R. Civ. P. 15(c)(1)(C).

Judge Johnston determined that Rodriguez's § 1983 claims in his Amended Complaint arose from the "essentially the same" underlying facts as the ICWA claims alleged in his Original Complaint. (Doc. 89 at 15). Judge Johnston thus determined that the claims "generally speaking" related back to the date of the filing of Rodriguez's Original Complaint. *Id.* Judge Johnston nevertheless dismissed the § 1983 claims against the 27 new defendants added to the Amended Complaint. *Id.* at 14.

To add a new defendant to a claim that relates back to the original filing, the new defendant knew or should have known that he or she would be called into court on the claim. *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1203 (9th Cir. 2014). Judge Johnston determined that the only defendants who

11

could have been put on notice based on the Original Complaint would have been the State of Montana and the Department of Health and Human Services, neither of whom are amenable to suit under § 1983. (Doc. 89 at 17). The 27 new individual defendants would be prejudiced in maintaining a defense because they had not been made aware of the possibility of being sued at the time of the original complaint. *Id.*

Rodriguez objects to the Judge Johnston's finding and asserts that the added defendants would have been put on notice by the Original Complaint because they are employees of the State, which was a party to the Original Complaint. (Doc. 93 at 13).

Rodriguez misconstrues the notice requirement. It would create dangerous precedent to accept the proposition that every suit against the State places every state employee on notice that they might be liable as an individual. It is not enough that a plaintiff brings a case against an entity, or even that a case is brought against "John Does" within that entity. *See Boss v. City of Mesa*, 746 F. App'x 692, 695 (9th Cir. 2018). The original complaint should place later-added defendants on notice of potential culpability in order for relation back. *Rodgers v. Horsely*, 123 F. App'x 281, 286 (9th Cir. 2005) (citing *Ingram v. Superior Court*, 98 Cal.App.3d 483, 159 Cal.Rptr. 557, 560–61 (1979) (finding the relation back doctrine

inapplicable where plaintiff failed to name party as a defendant either in the caption or the body of the complaint and only included an allegation that the party was negligent)).

Rodriguez refers to some of the added defendants in his "Factual and Procedural History" of his Original Complaint, but his argument and his prayer for relief are solely directed at the named defendants at that time—the State and DPHHS. (Doc. 2). The Court agrees with Judge Johnston that there is "nothing about the way Rodriguez originally pursued his claims that would give any of these defendants notice they were going to be sued." (Doc. 89 at 17). Rodriguez § 1983 claims do not relate back to his Original Complaint and the Court subsequently finds no error with Judge Johnston's recommendation that these claims should be dismissed.

   c. **Remaining claims**

Judge Johnston dismissed Rodriguez's remaining claims for a variety of reasons, including: the claims were unrelated to his Original Complaint and they failed to state a federal claim.

   i. **Unrelated new claims**

Judge Johnston dismissed Counts 30, 31, 33, and 37 without prejudice because they did not arise out of the same transactions and occurrences as

13

Rodriguez's Original Complaint. (Doc. 89 at 20). Rodriguez's only objection to this finding appears to be his assertion that these claims "directly implicate[] the same ICWA and [§1983] rights implicated in the rest of the Amended complaint." (Doc. 93 at 16).

The facts asserted in these claims, however, contradicts Rodriguez's assertion. Counts 30 and 33 both involve conduct that took place in 2020, long after Rodriguez's parental rights were terminated. Count 31 focuses on Rodriguez's own arrest and criminal case, not his parental rights case. Finally, Count 37 involves the conduct of his children's foster parents. Rodriguez may feel that these claims "directly affected the termination of plaintiff's parental rights to his children," but none of these claims directly involve the court action that Rodriguez seeks to invalidate in his Original Complaint. (Doc. 89 at 20). The Court finds no error in Judge Johnston's decision.

### ii.  Claims otherwise barred

Judge Johnston recommended dismissal of several of Rodriguez's claims for failure to state a federal claim. (Doc. 89 at 21). Rodriguez made several claims, including in Counts 32, 34, 35, 38, and 39, that the termination of his parental rights violated his "5th and 14th Amendment due process and equal protection rights." *See* (Doc. 42).

14

1. **Due Process Claims**

The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *See Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997). A parent's right to the care and custody of his or her child is a "fundamental liberty interest" that must be protected by "fundamentally fair procedures." *In re A.S.A.*, 852 P.2d 127, 129 (Mont. 1993) (*citing Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)).

Rodriguez focuses his objection on the fundamental liberty interests that he argues were violated, including his fundamental right as a parent. (Doc. 17-19). Rodriguez misapprehends the nature of Judge Johnston's analysis. The issue with his claims was not the absence of a fundamental liberty interest—Judge Johnston acknowledged in his Findings and Recommendations that such an interest existed. (Doc. 89 at 21). The issue is that Rodriguez's failed to identify any constitutional deficiencies in the due process he received. His due process claims were all founded on violations of ICWA. *Id.*

Rodriguez similarly objects to Judge Johnston's finding that his 14th Amendment due process claims were precluded by the Montana Supreme Court's opinion on the same issue. Rodriguez argues that "res judicata does not apply to

15

claims arising out of the violations of the ICWA." (Doc. 93 at 21). Rodriguez once again misses Judge Johnston's primary point—his due process claims should arise out of the Constitution, not ICWA. The Court finds no error in Judge Johnston's recommendation to dismiss Rodriguez's due process claims.

### 2. Equal Protection

Judge Johnston found that Rodriguez's equal protection claims failed because he "does not identify a protected class to which he belongs, and though he repeatedly states that various defendants were allegedly biased against him, he never alleges that this bias was based on his membership in a protected class." (Doc. 89 at 24).

Rodriguez seeks to remedy this critique in his objection by arguing that he belongs to the protected class of "Hispanic Male Father of Indian Children." (Doc. 93 at 23). Rodriguez nonetheless still fails to demonstrate any way in which the bias he allegedly experienced was based on this alleged protected class. He only claims that it is a "well-known fact that Hispanics are disfavored in the State of Montana." (Doc. 93 at 24). Such "allegations are conclusory and not entitled to be assumed true" for purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The Court finds no error in Judge Johnston's analysis.

### 3. Failure to State a Federal Claim

Rodriguez does not present a meaningful objection to Judge Johnston's recommendation to dismiss Count 32, only arguing that amendment could cure the deficiency. (Doc. 93 at 24). The Court reviews such a perfunctory response for clear error. *Rosling v. Kirkegard*, 2014 WL 693315 *3 (D. Mont. Feb. 21, 2014) (internal citations omitted). The Court finds no error in Judge Johnston's recommendation to dismiss Count 32.

### d. Improper Defendants

Rodriguez objected to Judge Johnston's finding that "immunities [] might attach" to various defendants named in the Amended Complaint. (Doc. 93 at 24). The Court need not address this objection because Judge Johnston's passing reference to the impropriety of some of the defendants merely served as "additional background" and not a determinative legal conclusion. (Doc. 89 at 26).

## II. Miscellaneous Motions

Judge Johnston denied Rodriguez's motion for compliance with the Federal Rules of Civil Procedure (Doc. 52) and motion for a typewriter as moot (Doc. 74). The Court agrees that these motions are no longer moot in light of the Court's decision to allow Rodriguez's ICWA claims to proceed. Rodriguez may renew these motions if he so wishes.

Judge Johnston recommended that Rodriguez's motion for entry of default judgment should be denied and the entry of default against the three defendants who failed to appear set aside. (Docs. 79, 83, and 87). Rodriguez's objection is substantively a reargument of the factors already considered by Judge Johnston. (Doc. 93 at 26-30). Where a party's objections constitute perfunctory responses argued in an attempt to engage the district court in reargument, the Court will review the applicable portions of the findings and recommendations for clear error. *Rosling v. Kirkegard*, 2014 WL 693315 *3 (D. Mont. Feb. 21, 2014) (internal citations omitted). The Court finds no error in Judge Johnston's recommendation to deny default judgment.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Judge Johnston's Findings and Recommendations (Doc. 89) are **ADOPTED IN PART** and **REVERSED IN PART**.

2. Defendants' motions to dismiss are **GRANTED** (Docs. 58 and 64), as to the claims against them with regard to all claims except those arising under the Indian Child Welfare Act.

3. The remaining claims of Plaintiff's Amended Complaint are **DISMISSED** with prejudice, as failing to state a claim, with the exception of Counts 30, 31, 33, and 37, which are **DISMISSED** without prejudice.

4. Plaintiff's motions for entry of default judgment are **DENIED**, and the entry of default set aside. (Docs. 79, 83, and 87.)

5. At all times during the pendency of this action, Rodriguez must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

DATED this 23rd day of February, 2022.

_____
Brian Morris, Chief District Judge
United States District Court