## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JUAN RODRIGUEZ, | **CV 17-104-H-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| STATE OF MONTANA et al, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Juan Rodriguez ("Rodriguez") has filed two motions for preliminary injunction. (Doc. 105; Doc. 115.) Defendants Montana Department of Health and Human Services ("DPHHS"), Theresa Diekhans, Theresa Adams, April Jones, Sahrita Jones, Heather Smith, Brandi Campbell, Becci Delinger, Alana Kietzman, Trevor Jones, and Lisa Anderson Mangan (collectively "Defendants") oppose the motions. (Doc. 108; Doc. 120; Doc. 121.)

## BACKGROUND

Rodriguez challenges an underlying Montana state-court decision that terminated his parental rights. The underlying case began in 2009, when DPHHS became involved with Rodriguez, his wife, S.R., and their children, J.R. and B.R. *See In re B.R.*, 381 P.3d 548, 549 (Mont. 2016). The children are enrolled members of the Chippewa Cree Tribe ("Tribe"). *Id.* J.R. and B.R. qualify as "Indian children"

1

under the Indian Child Welfare Act ("ICWA"). *Id.*

Rodriguez stipulated to J.R. and B.R being adjudicated as "youths in need of care" and signed a treatment plan on December 23, 2009. *Id.* DPHHS petitioned to terminate Rodriguez's parental rights for failure to complete his treatment plan and abandonment on December 8, 2011. *Id.* DPHHS petitioned to terminate S.R.'s parental rights for failure to complete her treatment plan on March 1, 2012. *Id.* The Eighth Judicial District Court, Cascade County, granted Rodriguez's motion to continue the termination hearing on March 8, 2012. *Id.* The Montana state district court transferred jurisdiction of the matter to the Tribe pursuant to ICWA on May 11, 2012. *Id.* The Tribe returned J.R. and B.R. to the custody of S.R. *Id.*

DPHHS petitioned for emergency protective services, adjudication as youths in need of care, and temporary legal custody of J.R. and B.R. again on October 1, 2012, after S.R. violated the order of protection she had against Rodriguez. *Id.* The Montana state district court held a Show Cause and Adjudicatory Hearing on DPHHS's petition on February 20, 2013. *Id.* The Montana state district court adjudicated J.R. and B.R. as youths in need of care. *Id.* Rodriguez moved to dismiss the case in March of 2013. *Id.* The Montana state district court denied Rodriguez's motions and objections, in part, because the record contained sufficient evidence showing Rodriguez's "very clear anger, violence and paranoia." *Id.*

The Montana state district court noted in a June 28, 2013 Order that "the

parents are making visits but that they are not cooperating on doing any other part of their treatment plans." *Id.* DPHHS petitioned to terminate Rodriguez's and S.R.'s parental rights for failure to complete the treatment plans on September 18, 2013. *Id.* DPHHS withdrew the petition on January 3, 2014, to allow the parents an additional three months to work on the treatment plans. *Id.* Rodriguez had yet to complete any portion of his treatment plan, except for occasionally visiting J.R. and B.R. *Id.*

DPHHS filed another petition to terminate Rodriguez's and S.R.'s parental rights on June 6, 2014. *Id.* The petition included an affidavit from the case's Child Protective Specialist ("CPS"). *Id.* The CPS attested that Rodriguez and S.R. continually missed visitations. *Id.* The CPS further represented that the visitation environment proved hostile, in part due to the fact that Rodriguez had made death threats to the CPS. *Id.* The Montana state district court held a termination hearing on July 28, 2014. *Id.* The Montana state district court terminated Rodriguez's and S.R.'s parental rights on September 30, 2014. *Id.*

Rodriguez moved for a new trial on October 28, 2014, asserting that he had not been afforded additional time required by ICWA to prepare for the termination hearing. *Id.* The Montana state district court granted the motion and held a new trial on December 12, 2014. *Id.* The Montana state district court met with J.R. and B.R., *in camera*, the day before trial, on December 11, 2014. *Id.* The children disclosed

that they did not want to go home to their parents because they were scared to do so. *Id.* The Montana state district court suspended the hearing to address a potential contradiction in testimony from a collateral criminal matter involving Rodriguez. *Id.* The termination hearing resumed on June 25, 2015. *Id.* The Montana state district court entered its Findings of Fact, Conclusions of Law, and Order on July 13, 2015. *Id.* The Montana state district court concluded beyond a reasonable doubt that terminating Rodriguez's parental rights and keeping J.R. and B.R. in their then-current placement best served the children's interests. *Id.*

Rodriguez appealed. The Montana Supreme Court affirmed the decision to terminate Rodriguez's parental rights on September 20, 2016. *Id.* The Montana Supreme Court specifically considered whether the termination of Rodriguez's parental rights complied with ICWA. "In ICWA cases, we will uphold the district court's termination of parental rights if a reasonable fact-finder could conclude beyond a reasonable doubt that allowing the parent to continue with custody would likely 'result in serious emotional or physical damage to the child.'" *Id.* (citing and quoting *In re K.B.*, 301 P.3d 836, 839 (Mont. 2013)); 25 U.S.C. § 1912(f).

The Montana Supreme Court determined that the Montana state district court "correctly applied ICWA's § 1912(f) criteria to its findings of fact, and [] correctly applied all the necessary Montana and ICWA criteria to hold, on multiple grounds, that [Rodriguez's] parental rights had to be terminated." *In re B.R.*, 381 P.3d at 549.

4

The Montana Supreme Court determined that substantial evidence existed to support the Montana state district court's finding that Rodriguez's custody of his children likely would result in serious emotional or physical damage to the children. *Id.* Rodriguez filed a petition for writ of certiorari with the U.S. Supreme Court on March 10, 2017. The U.S. Supreme Court denied the certiorari petition on May 15, 2017. *Rodriguez v. Montana*, 137 S. Ct. 2124 (2017).

Scott Wayne Ellison ("Mr. Ellison") and Tasia Ellison ("Ms. Ellison") (collectively "Ellisons") adopted J.R. and B.R. The Ellisons are non-Native. Mr. Ellison subjected J.R. and B.R. to severe sexual abuse during the adoptive placement. A jury convicted Mr. Ellison in Montana state district court of six counts of child sexual abuse, including three counts of incest and two counts of sexual intercourse without consent in July of 2018. (Doc. 105-1 at 4.) J.R. and B.R. were under 13 years old at the time of the abuse. Mr. Ellison is currently serving six consecutive 100-year sentences, with none of the time suspended. (*Id.* at 6.)

Rodriguez filed this action on November 6, 2017. (Doc. 1.) Rodriguez is an incarcerated person proceeding *pro se*. Rodriguez's claim seeks invalidation of the termination of his parental rights based on alleged violations of ICWA. The Court assumes familiarity with the federal-court procedural history as detailed in its February 23, 2022 Order. (Doc. 95 at 2–5.)

**LEGAL STANDARD**

District courts possess discretion regarding the grant or denial of preliminary relief. *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). A party seeking a preliminary injunction must establish the following four elements: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities tips in their favor; and (4) that a preliminary injunction would be in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

A party seeking a mandatory injunction must meet a heightened standard by "establish[ing] that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). A mandatory injunction "require[s] [the non-movant] to take affirmative action." *Id.* "[M]andatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases.'" *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022).

**DISCUSSION**

Rodriguez has filed two motions seeking preliminary injunctions. The first motion seeks an injunction related to the parenting, custody, and visitation of Rodriguez's biological children. (Doc. 105.) The second motion seeks an injunction related to his access to legal materials while incarcerated at MSP. (Doc. 115.) Defendants argue that the Court lacks subject matter jurisdiction to entertain the first

motion and lacks personal jurisdiction to enjoin the parties who the Court would need to enjoin to provide the relief sought by Rodriguez. (Doc. 120 at 3–5.) Defendants similarly contend that the Court lacks personal jurisdiction over the persons who can afford the relief that Rodriguez requests in his second motion for preliminary injunction. (Doc. 121 at 2.)

## I.      First Preliminary Injunction Motion.

Rodriguez seeks the following injunctive relief: (1) mandatory weekly visits at Montana State Prison ("MSP") with J.R. and B.R.; (2) grandparent and extended family visits with J.R. and B.R.; and (3) removal of J.R. and B.R. from the custody of Ms. Ellison and placement with the children's biological aunt in Havre, Montana. (Doc. 105 at 9–10.) The Court first notes that this injunctive relief sought by Rodriguez constitutes a mandatory injunction. The requested injunctive relief "goes beyond simply maintaining the status quo and orders the responsible party to take action." *Snyder*, 28 F.4th at 111.

Rodriguez does not currently have visits with J.R. and B.R. To maintain the status quo would be to leave the children in the custody of Ms. Ellison. The relief sought by Rodriguez would require DPHHS to facilitate visits at the MSP, to remove J.R. and B.R. from Ms. Ellison's custody, and to facilitate extended family visits. Accordingly, the Court must use the higher standard for mandatory injunctions in determining whether to award the requested injunctive relief.

The Court first notes that the Court remains unable to award the relief requested with respect to J.R. due to the fact that J.R. has reached the age of majority. It remains undisputed that J.R. was born in 2005. (Doc. 152-4 at 287.) J.R. reached the age of majority in 2023. Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). The right to determine the custody of one's children evaporates when the child reaches the age of majority and becomes a legal adult. *See Chrestenson v. Chrestenson*, 589 P.2d 148, 149–50 (Mont. 1979) ("upon attaining the age of eighteen a person is an adult and is no longer a 'child' . . . of whom parents are entitled to custody or to whom parents are obligated for support"). Courts lose the ability to determine the custody and visitation of a person once that person reaches the age of 18 absent any determination of incompetency. The Court cannot order the relief requested regarding the custody and visitation of J.R. The Court must deny the injunctive relief sought by Rodriguez as to J.R. on that basis alone.

### A. Jurisdiction

"A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (citing Fed. R. Civ. P. 65(d)). "[A]n injunction binds only 'the parties to the action, their officers, agents, servants, employees, and attorneys, and .

. . those persons in active concert or participation with them who receive actual notice of the order.'" *Id.* (quoting Fed. R. Civ. P. 65(d)).

Defendants argue that the Court lacks subject matter jurisdiction over Rodriguez's claims. Defendants frame the relief sought by Rodriguez as an injunction on the Montana state district court's dependency and neglect case involving the adoptive parents of J.R. and B.R. after Mr. Ellison's abuse was discovered. (Case No. ADN-18-152; Case No. ADN-18-153). (Doc. 120 at 3–4.) Defendants argue that the Court lacks subject matter jurisdiction over such proceeding because Rodriguez himself is not a party to that case. (*Id.*) Defendants misconstrue the injunctive relief requested.

Rodriguez's claim under 25 U.S.C. § 1914 seeks to invalidate the termination of his parental rights from the case that terminated his parental rights. (Case No. ADN-12-150; Case No. ADN-12-151.) Rodriguez's motion for preliminary injunction asks the Court to restore visitation rights and remove the children from Ms. Ellison's custody pending this Court's determination on Rodriguez's ICWA claim. No doubt exists that the Court possesses federal question jurisdiction to review the Montana state court's termination of Rodriguez's parental rights pursuant to 25 U.S.C. § 1914. *Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005).

Defendants appear to imply that the Court lacks subject matter jurisdiction because Rodriguez's parental rights have been terminated and the children have been

adopted. This argument proves contrary to the express grant in 25 U.S.C. § 1914 for parents to petition to invalidate the termination of their parental rights. Caselaw also fails to support Defendants' argument. The Ninth Circuit in *Mann* reviewed, pursuant to a claim under 25 U.S.C. § 1914, the termination of a parent's rights after an adoption already had occurred. 415 F.3d at 1040–41. The Court possesses subject matter jurisdiction over Rodriguez's claims pursuant to 28 U.S.C. § 1331 and 25 U.S.C. § 1914.

The Court lacks personal jurisdiction, however, over persons who prove necessary to afford the relief that Rodriguez requests in his first motion for preliminary injunction. Rodriguez requests that the Court mandate weekly visits at MSP between J.R. and B.R. and Rodriguez. Rodriguez further requests that DPHHS remove J.R. and B.R. from Ms. Ellison's custody and place the children with a maternal aunt. The Court possesses no jurisdiction over Ms. Ellison, the children's aunt, MSP, Montana Department of Corrections ("MDOC"), or any other person who Rodriguez has not made a party to this litigation. Rodriguez seeks relief, however, that implicates the rights and duties of such non-parties.

For example, removal of the children from Ms. Ellison implicates the parental rights granted to her by the Montana state district court in approving her adoption of B.R. and J.R. The Court recognizes Rodriguez's contention that the grant of rights to Ms. Ellison proved invalid based on the alleged violations of ICWA in the

proceedings to terminate Rodriguez's parental rights. The Court notes, however, that Ms. Ellison retains custodial rights until the Court determines the merits of Rodriguez's ICWA claim. Rodriguez has not made Ms. Ellison a party to this case. The Court "may not attempt to determine the rights of persons not before the court." *Zepeda*, 753 F.2d at 727. Rodriguez's request for weekly visits and daily phone contact implicates the duties of MSP and MDOC because Rodriguez is an incarcerated person. To grant the requested injunctive relief would be to require MSP and MDOC to approve the children as visitors, approve and help facilitate weekly visits, and allow Rodriguez daily phone access. Rodriguez's request for placement of the children with their maternal aunt would impose custodial and parental duties on a party not present before the Court.

The Court must possess both subject matter jurisdiction over a claim and personal jurisdiction over the parties whose conduct an injunction seeks to enjoin. *Zepeda*, 753 F.2d at 727. The Court has determined that it possesses subject matter jurisdiction over Rodriguez's claims. The Court lacks personal jurisdiction, however, over parties necessary to effectuate the injunctive relief. The Court accordingly must deny Rodriguez's motion for a preliminary injunction regarding the care, custody, and visitation of J.R. and B.R. (Doc. 105.)

### B. *Winter*'s Factors

Even assuming that the Court possesses the requisite subject matter

jurisdiction and personal jurisdiction to issue the injunction sought by Rodriguez, Rodriguez still must establish the *Winter*'s factors. Rodriguez, as the party moving for a preliminary injunction, "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[A] stronger showing of one element may offset a weaker showing of another." *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1221 (9th Cir. 2023) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

### i.      Likelihood of Success on the Merits

Section 1914 of Title 25 of the United States Code permits the Court to review and invalidate a termination of parental rights "upon a showing that such action violated any provision of sections 101, 102, and 103 of this Act [25 USCS §§ 1911, 1912, and 1913]." 25 U.S.C. § 1914 (alteration in original). Section 1911 pertains to jurisdiction, the transfer of proceedings to tribal court, and a tribe's right to intervene in proceedings. Section 1912 contains notice procedures, a provision for the appointment of counsel, the active efforts requirements, and the "beyond a reasonable doubt" standard for termination of parental rights. Section 1913 pertains only to voluntary terminations of parental rights.

Rodriguez argues that he is likely to succeed on the merits of his claim under

25 U.S.C. § 1914. Rodriguez offers his amended complaint and a series of provisions from ICWA and the Montana Code Annotated to support this contention. Rodriguez challenges whether the Montana state district court failed to apply ICWA's placement preferences. This claim alleges a potential violation of § 1915 of ICWA and falls outside the grounds provided in § 1914 for invalidation of the termination of parental rights. The Court accordingly will not address that argument. Rodriguez also appears to allege ineffective assistance of counsel. (Doc. 152-1 at 37.) Rodriguez appears to challenge whether DPHHS made active efforts before terminating Rodriguez's parental rights. These two contentions allege violations of 25 U.S.C § 1913. Rodriguez provides no analysis or argument, however, as to the specific facts of his case or the application of ICWA to the case. Rodriguez fails to apply *Strickland* or otherwise show how his counsel proved ineffective and fails to explain how DPHHS's efforts fell below the "active efforts" standard.

Rodriguez notes that his complaint survived screening and motions to dismiss as evidence that he is likely to succeed on the merits of his claim. (Doc. 105 at 8.) The Court notes that the thresholds and assumptions made at those stages differ substantially from the standards that Rodriguez must meet for a preliminary injunction. Both at the screening stage and the motion to dismiss stage the Court considers only whether the complaint states a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). The Court accepts all factual allegations as true when making that determination. *Iqbal*, 556 U.S. 678; s*ee Olivas v. Nevada ex rel. Dep't of Corrections*, 856 F.3d 1281, 1282–83 n.1 (9th Cir. 2017). The Court does not accept all allegations as true or make all reasonable inferences in favor of the movant when deciding a motion for preliminary injunction. *See Doe v. Univ. of Southern Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Rodriguez's requested preliminary injunction also requires a showing of "likelihood of success" rather than the lower "plausibility" standard used at the screening and motion to dismiss stages.

Rodriguez has presented thousands of pages of exhibits from the Montana state court proceedings. He fails to articulate, however, how those exhibits demonstrate a likelihood of succeeding on his ICWA claim. Rodriguez continually asserts that DPHHS failed to provide active efforts to reunify the family. Rodriguez also presents evidence, however, that DPHHS had the Center for Mental Health provide in-home services and in-home supervised visits with the children, several of which had to be stopped due to improper environments for the children. (*See* Doc. 154-1 at 12–13, 23.) DPHHS also facilitated visits with the children at the office but had to terminate such visits with Rodriguez due to Rodriguez making threats against DPHHS.

The documents presented by Rodriguez show that DPHHS set Rodriguez up with a treatment plan and connected Rodriguez and S.R. with couples and co-

parenting counseling. Rodriguez failed to complete homework assignments for counseling and quit attending after approximately three months. (Doc. 152-7 at 123.) The documents presented by Rodriguez also show that Rodriguez struggled to avoid contact with the criminal justice system. He was charged in November of 2012 with two counts of sexual intercourse without consent, one count of aggravated promotion of prostitution, two counts of sexual abuse of children, and one count of sexual assault. (Doc. 152-4 at 324–26.) Rodriguez was arrested in March of 2013 for Partner/Family Member Assault. (*Id.* at 326.) Rodriguez had his probation revoked in 2015 and was sentenced to the MDOC for ten years with five years suspended. (Doc. 152-7 at 12.) The Montana state district court appropriately recognized that this incarceration left Rodriguez unable to provide adequate parental care for the children and rendered reunification impossible for the foreseeable future. (Doc. 152 at 995–97.)

The documents presented also show that the children indicated on multiple occasions that they were scared of Rodriguez and scared of being alone on overnight visits. (Doc. 154-1 at 88, 92, 94, 105.) DPHHS attempted an overnight visit but that resulted in the police being called and the children being removed for safety concerns. (*Id.* at 110.) Continued fighting between Rodriguez and S.R. created safety concerns for the staff supervising visits within the home. (*Id.* at 138.) The records provided by Rodriguez support these concerns as they document several instances,

including reports by the children, in which Rodriguez threatened to kill others. (Doc. 154-1 at 100; Doc. 152-7 at 179, 198; Doc. 152-5 at 92, 102.)

The Court also notes that between the 2009 case that was transferred to the Tribe and the Montana state district court case, J.R. had spent over 5 years in the custody of the State of Montana compared to just under five years spent in the custody of his parents. (Doc. 152-7 at 8.) B.R. had spent over five years in the custody of the State of Montana and under three years of her life in the custody of her parents. (*Id.*) Testimony from the children's counselor presented concerns that continued reunification efforts would prolong the time the children spent without a stable, permanent environment, which proves damaging to children. (Doc. 152-7 at 172.) The children's counselor further testified that the children resisted efforts at reunification and displayed behaviors indicative of distress when DPHHS considered restarting in-person visitations. (*Id.* at 172–73.)

The party seeking a preliminary injunction bears the burden of proving a likelihood of success on the merits or at least serious questions going to the merits. *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 490 (9th Cir. 2023). Rodriguez has failed to meet this burden. Rodriguez has failed to provide any explanation as to how his attorney provided ineffective assistance of counsel and how DPHHS's efforts to reunify the family fell below the standard of "active efforts." The various case documents submitted by Rodriguez and the fact that Rodriguez has pled

sufficient facts to survive a motion to dismiss prove insufficient to demonstrate a likelihood of success on the merits. The Court finds that Rodriguez has failed to demonstrate a likelihood of success or serious questions as to the merits of his claim.

### ii. Likelihood of Suffering Irreparable Harm

Rodriguez asserts that the continued separation of him and his children presents a likelihood of irreparable harm to his relationship with the children as well as harm to Rodriguez's psychological wellbeing. (Doc. 105 at 3–4.) Rodriguez further asserts that continued custody by Ms. Ellison exposes the children to trauma, as it keeps the children in the home and family in which they experienced sexual abuse. (*Id.* at 4–6.) Finally, Rodriguez contends that keeping the children in the custody of Ms. Ellison deprives the children of contacts with their extended family and their culture. (*Id.* at 6–7.)

The Court notes that Rodriguez has had no contact with his children since 2014—approximately ten years. The Court recognizes the damage to his relationship with his children caused by the termination of Rodriguez's parental rights. The Court notes, however, that much of that damage occurred over the last ten years. The Court remains unsure how keeping the children in their current placement throughout the pendency of this proceeding would damage this relationship further. The Court also notes that Rodriguez remains incarcerated. Rodriguez's incarcerated status presents significant hurdles to the children maintaining a relationship with Rodriguez or

having contact with him.

DPHHS opened a case regarding the sexual abuse perpetrated by Mr. Ellison and investigated the home as a result. DPHHS has since closed that case, indicating that DPHHS had no concerns regarding the children's emotional or physical wellbeing once Mr. Ellison was removed from the home. The Court also notes that the documents presented by Rodriguez indicate that the children opposed returning home to their father and that they fear him. (Doc. 152-6 at 65–66.) The Court struggles to find that forcing a relationship with Rodriguez would not cause additional psychological harm to the children.

The Court also struggles to find support in the record for the harm to the children's culture. The Tribe supported the placement of the children with Ms. Ellison. (Doc. 152-5 at 113.) The ICWA expert also testified in favor of termination. (Doc. 146-2 at 78–79.) At least one family member supported the placement of the children with Ms. Ellison. (Doc. 152-5 at 163–64; Doc. 152-6 at 46–47.) The Court also notes that Rodriguez requests placement of the children with a maternal aunt who has not indicated any willingness to take the children and who has not been approved as an appropriate caretaker/placement by DPHHS or the Tribe.

The Court finds that Rodriguez has made some showing of a likelihood of irreparable harm in that he will continue to be deprived of his relationship with J.R. and B.R. Such showing proves weak, however, as Rodriguez's incarcerated status

would interfere substantially with such relationship even if the Court allowed the contact as requested by Rodriguez. Rodriguez has otherwise failed to demonstrate a likelihood of irreparable harm to the children's psychological wellbeing or cultural wellbeing.

### iii.    Balance of Equities

Rodriguez claims that the balance of equities tips in his favor because further deprivation of a relationship with J.R. and B.R. will cause Rodriguez to continue to suffer severe depression and hopelessness. The Court recognizes that Rodriguez will be prohibited from having contact with J.R. and B.R. absent the relief requested. The Court notes that the lack of contact between Rodriguez and his children represents a substantial harm if Rodriguez's rights were terminated in violation of §§ 1911, 1912, or 1913. The harm proves insubstantial, however, if the Montana state district court abided by those provisions of ICWA in terminating Rodriguez's rights.

The injunction sought by Rodriguez also seeks to remove the children from the only parental figure that the children have had for the last ten years and from the place that the children have lived for nearly twelve years. Rodriguez seeks to have the children placed with a maternal aunt, who is not a party to this proceeding and has not indicated an ability or willingness to take custody of the children. The injunction also seeks to deprive Ms. Ellison of her rights as an adoptive parent of B.R. and J.R. that have since been awarded by the Montana state district court. The

Court also notes that the documents presented by Rodriguez indicate that J.R. and B.R do not feel safe with Rodriguez, fear Rodriguez, and experienced regressions in behavior the last time that the Montana state district court mandated visitation with Rodriguez.

The proposed injunction also would impose substantial burdens on the state government and its agencies. DPHHS would have to obtain an assessment as to whether the proposed maternal aunt represents an appropriate placement, DPHHS would have to transport B.R. weekly between Havre and Deer Lodge, and DPHHS would have to pay the costs of transport. DPHHS, MSP, and MDOC would also have to facilitate weekly visits and daily phone calls.

Several factors tip the equities against granting an injunction. These factors include the burden on DPHHS and other state agencies, the potential psychological harm to the children, and the limited relationship Rodriguez could have with the children given his incarcerated status. These factors also include that the proposed placement has not been vetted as safe or willing to provide for the care of the children and that the proposed injunction would undo a Montana state court's grant of adoptive rights without any say or participation by the adoptive parent.

### iv.   Public Interest

The requested injunction would pose a burden on state resources. The requested relief also would remove J.R. and B.R. from a home that has been

approved by DPHHS to a home whose safety has not been investigated. The requested relief would remove the children from the only parental figure the children have known for the last ten years to someone who has not been approved as an appropriate custodian and has not expressed a willingness to this Court to take custody of the children.

No doubt exists that the preservation of ties between an Indian child and their Tribe serves the public interest. Congress's enactment of ICWA demonstrates the strong public interest in protecting Indian children, their family unit, their culture, and their Tribe. The Court notes, however, that the Tribe approved of placing the children with Ms. Ellison, did not object to the termination of Rodriguez's rights, and chose not to seek a transfer of the proceedings to tribal court. Congress, through the passage of ICWA, established a policy of not only protecting Indian children and families, but also "promot[ing] the stability and security of Indian tribes." 25 U.S.C. § 1902. The Tribe's determinations on child custody, intervention, and the termination of parental rights deserve great weight. The ICWA expert similarly supported termination of Rodriguez's parental rights. There even appears to be some indications in the record that the children's biological mother, the one with the Indian heritage and tribal connection, supported the placement of the children with Ms. Ellison and the termination of Rodriguez's parental rights. (Doc. 152-6 at 58, 73–74.)

The Court also notes that the documents presented by Rodriguez indicate that J.R. and B.R did not feel safe with Rodriguez, feared Rodriguez, and experienced regressions in behavior the last time that the Montana state district court mandated visitation with Rodriguez. The public interest favors safety, security, and stability for children. The Court struggles to find that the issuance of a preliminary injunction would serve the public interest under the specific facts presented by Rodriguez's case. Rodriguez has failed to establish the *Winter*'s factors. The Court will not grant the requested injunctive relief relating to the care, custody, and visitation of J.R. and B.R.

## II.    Second Preliminary Injunction Motion.

Rodriguez seeks an additional preliminary injunction from the Court to order access to his legal files, LexisNexis, a typewriter, and paper. (Doc. 115.) Defendants oppose the motion on the grounds that none of them can provide the relief Rodriguez seeks. (Doc. 121 at 1–2.) Rodriguez seeks injunctive relief from the Court to provide him increased access to legal research materials while in custody at MSP. Defendants are DPHHS and DPHHS employees. None of the Defendants are employees of MDOC or MSP. The Court cannot order non-party MDOC or MSP employees to take action on Rodriguez's behalf with respect to his access to legal materials while incarcerated. *Zepeda*, 753 F.2d at 727. The Court determines that it lacks personal jurisdiction to grant Rodriguez the relief he seeks in his second

preliminary injunction motion. The Court will deny the motion. (Doc. 115.)

## CONCLUSION

The Court recognizes the tragic circumstances presented by Rodriguez's claims. All of the adults in the lives of J.R. and B.R., including the biological parents, adoptive parents, and the child protective services division failed to protect the children from years of trauma, physical abuse, and sexual abuse. The Court cannot change these sad facts. The Court lacks personal jurisdiction, however, over the persons who can afford the relief that Rodriguez seeks in his motions for preliminary injunction. Rodriguez also has failed to meet his burden of establishing the *Winter*'s factors. The Court must deny both of Rodriguez's motions for preliminary injunction. (Doc. 105; Doc. 115.)

## ORDER

Accordingly, it is **HEREBY ORDERED** that:

1. Rodriguez's First Motion for Preliminary Injunction (Doc. 105) is **DENIED.**

2. Rodriguez's Second Motion for Preliminary Injunction (Doc. 115) is **DENIED.**

3. Rodriguez's Motion to Transmit District Court Record (Doc. 147) is **MOOT**. Rodriguez claimed that such record proved necessary to support his motion for preliminary injunction. Rodriguez filed his reply, however, without the requested information. (*See* Doc. 152.) Rodriguez is encouraged to refile his

motion related to the Montana state district court record if Rodriguez finds that such documents prove necessary to his case.

DATED this 20th day of June, 2024.

_____
Brian Morris, Chief District Judge
United States District Court